# STATE v. CARL H. FREDLUND.[1]

May 21, 1937.

No. 31,252.

[1]Reported in 273 N. W. 353.

*Eugene A. Rerat, Neil Hughes,* and *Walter J. Welch,* for defendant.

*William S. Ervin,* Attorney General, *Roy C. Frank,* Assistant Attorney General, *Ed J. Goff,* County Attorney, and *William G. Compton,* Assistant County Attorney, for the State.

JULIUS J. OLSON, JUSTICE.

In an automobile collision occurring upon a highway in rural Hennepin county August 11, 1935, one car being driven by a Mr. Busch, the other by defendant, Mrs. Busch lost her life as did also their minor child Walter. On August 22 the grand jury returned two indictments against defendant charging him with murder in the third degree under the provisions of 2 Mason Minn. St. 1927, § 10070, which reads:

"Such killing of a human being, when perpetrated by act eminently dangerous to others, and evincing a depraved mind, regardless of human life, although without a premeditated design to effect the death of any individual, or without a design to effect death, by a person engaged in the commission of, or in an attempt to commit, a felony either upon or affecting the person killed or otherwise, is murder in the third degree, and shall be punished," etc.

Indictment No. 32,900 involved the death of the boy, the other, No. 32,901, involved the death of Mrs. Busch. Both indictments are the same in substance except as to the person killed; the same witnesses were produced before the grand jury, and their names were identical as indorsed upon each indictment. Defendant en-·tered a plea of "not guilty" to each indictment. On September 16 next following he was placed on trial on indictment No. 32,901, the one charging him with the death of Mrs. Busch. On October 6 the jury returned a verdict of "not guilty," whereupon the court, pursuant to the verdict, pronounced and caused to be entered a judgment of acquittal thereby exonerating him from liability respecting that indictment.

On December 5, before the same court, defendant appeared requesting that he be permitted to.withdraw his plea of "not guilty" to the indictment referred to as No. 32,900 and that he be permitted to enter a formal plea of former jeopardy by reason of the jury's verdict on the trial of the indictment involving the death of Mrs. Busch. The court denied defendant's plea in that behalf and ordered him to file his plea of former jeopardy and acquittal in conjunction with his plea of "not guilty." Defendant duly excepted. He then entered his special plea in writing and therein adequately set forth the former adjudication.

There is no issue as to the facts, counsel having stipulated same and the court having adopted them as so stipulated. It is conceded that the only additional testimony to be adduced on the trial, if one is had on the remaining indictment, is to show the death and cause thereof of the boy, Walter Perry Busch. The court, in conformity with § 10756, being of opinion that certain questions of law had arisen which were so important and doubtful as to require a decision by this court, has duly certified them for our determination, defendant consenting thereto. The first, and we think the vital, question reads as follows:

"In a case where two automobiles collided on a public highway resulting in the death of two persons who were passengers in one of said automobiles, and the driver of the other automobile is charged in each of two indictments with murder in the third de-

gree, one of said indictments being based on the death of one of said passengers and the other indictment on the death of the other passenger, does acquittal of the charge contained in one of said indictments operate as a bar to further prosecution for the offense charged in the other indictment?"

Defendant relies upon State v. Moore, 86 Minn. 422, 90 N. W. 787, 61 L. R. A. 819; State v. Klugherz, 91 Minn. 406, 98 N. W. 99, 1 Ann. Cas. 307; State v. Healy, 136 Minn. 264, 161 N. W. 590, L. R. A. 1917D, 726; State v. Wheelock, 216 Iowa, 1428, 250 N. W. 617; State v. Cosgrove, 103 N. J. L. 412, 135 A. 871; People ex rel. Flinn v. Barr, 259 N. Y. 104, 181 N. E. 64, and other cases, as determinative of his position. His claim is thus stated: "Where the transaction or alleged criminal act for which the defendant has once been prosecuted is the same as that for which he is proceeded against on the second prosecution, the second will be barred." He also cites and relies upon art. 1, § 7, of our constitution, that part here material reading as follows: "No person * * * for the same offense shall be put twice in jeopardy of punishment, * * *." Likewise our attention is directed to 2 Mason Minn. St. 1927, § 10699, which reads:

"If the defendant shall have been convicted or acquitted upon an indictment for an offense consisting of different degrees, such conviction or acquittal shall be a bar to another indictment for the offense charged in the former, or for any inferior degree of that offense, or for an attempt to commit the same, or for an offense necessarily included therein of which he might have been convicted under that indictment."

■ The defense of former jeopardy "is an established maxim of the common law, in the administration of criminal justice." As such it is universally "recognized by elementary writers, and courts of judicature from a very early period down to the present time, that a man shall not be brought into danger of his life or limb for one and the same offense, more than once." 8 R. C. L. p. 134, § 114, and cases cited under note 16. For this reason, constitutional provision safeguarding this right is found in the federal constitu-

tion as well as in the constitutions of most, if not all, of the states. It is accordingly generally held that a plea of former conviction is good under either the constitution or the common law. "The protection thus afforded is not against the peril of second punishment, but against being again tried for the same offense." *Id.* p. 135, § 115, and cases under note 1. And the nature or kind of trial, as long as it is legal, does not affect defendant's right to this defense on a subsequent trial. However, "In order that a conviction, under a statute providing for summary trials, may be a bar to a prosecution in a higher court, it must appear that the case was properly within the authority and jurisdiction conferred by the statute, that the proceedings were fairly and legally conducted, and that all the material requirements of the statute were complied with, not colorably or collusively, but substantially and in good faith." *Id.* p. 137, § 117, and cases cited under notes 11 and 12.

■ That defendant was tried under a valid indictment and that the court had plenary jurisdiction of the cause as well as the parties may be conceded. The question requiring solution is whether defendant's conduct, causing two deaths by virtue of the same act, may be said to give rise to two different and distinct legal wrongs punishable under the statute under which these indictments were brought. Before defendant may avail himself of the plea of former jeopardy it is of course necessary that he show that the present prosecution is for *the identical act* and that the crime *both in law and fact* was settled by the first prosecution.

"In determining whether both indictments charge the same offense, the test generally applied is that when the facts necessary to convict on the second prosecution would necessarily have convicted on the first, a final judgment on the first prosecution will be a bar to the second, but if the facts which will convict on the second prosecution would not necessarily have convicted on the first, then the first will not be a bar to the second, although the offenses charged may have been committed by the same state of facts." *Id.* p. 143, § 128, and cases cited under note 21.

■ Of course it must be conceded that "when the facts constitute but one offense, though it may be susceptible of division into parts,

as in larceny for stealing several articles of property at the same time, a prosecution to final judgment for stealing some of the articles will bar a subsequent prosecution for stealing any of the other articles taken at the same time." 8 R. C. L. p. 145, § 130. And, by the same rule, where several forged instruments are uttered at the same time and by the same act to the same person, a conviction for uttering one of them will bar a prosecution for uttering the others. State v. Moore, 86 Minn. 422, 90 N. W. 787, 61 L. R. A. 819, and note. The same rule applies where the acquittal or conviction of a greater offense necessarily bars a lesser one. Thus, "The prosecution and acquittal of a defendant for setting fire to and burning a building is a good defense to a prosecution for setting fire to and burning the contents thereof." 8 R. C. L. p. 147, § 132, and cases cited under note 4.

■ But it is generally recognized that "When a single transaction constitutes two or more offenses, wherein the lesser offense is not necessarily involved in the greater, and when the facts necessary to convict on the second prosecution would not necessarily have convicted on the first, then the first prosecution will not be a bar to the second." *Id.* p. 148, § 133, and cases cited under note 7. At common law "a conviction for assault while the person assaulted is still living, is no bar to a prosecution for murder or manslaughter instituted after death has resulted to the person assaulted on account of the injuries received and the trial for murder does not place the defendant twice in jeopardy." *Id.* p. 148, § 134, and cases under note 15. In many cases "A single act may be an offense against two statutes, and, if each statute requires proof of an additional act which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." *Id.* p. 149, § 135, and cases under note 19. Therefore it necessarily follows that "a plea of former jeopardy will not be sustained where it appears that in one transaction two distinct crimes were committed. Based on this rule it has been held that if the killing of two persons is by distinct and separate acts, though done at the same time and as part of the same transaction, an acquittal for the killing of one is not a bar to

a prosecution of the same person for the killing of the other." *Id.* p. 151, § 139, and cases cited under notes 10 and 11.

In the instant case the same act caused the death of two different persons. Obviously the proof of the death of Mrs. Busch cannot possibly acquit or convict defendant of the killing of the child. The only thing determined by the prior adjudication is that as to her death the proof of defendant's misconduct was found insufficient to fasten guilt upon him. This is necessarily so because by 2 Mason Minn. St. 1927, § 10066, it is provided: "No person shall be convicted of murder or manslaughter *unless the death of the person alleged to have been killed, and the fact of killing by the defendant, as alleged, are each established as independent facts * * *."* (Italics supplied.)

■ The constitutional provision against double jeopardy has, as we have seen, for its objective that no one shall be brought into danger of punishment for the same offense more than once. But neither in the federal nor in our own constitution is there any prohibition against successive prosecutions if the wrongful *act* is the cause of separate and distinct *offenses.* Thus a single act may violate laws of different jurisdictions. Examples of such are numerous. Mention need only be made of liquor violations where one act may lead to prosecution and conviction for violation of municipal ordinance as well as state and federal laws. 8 R. C. L. pp. 149-150, §§ 136, 137. If this were a civil case no one would contend that a verdict exonerating defendant for the death of the mother would in any way impede the right of the son's administrator from proceeding with an action for recovery of damages for death by wrongful act. The result in the mother's trial would not even be considered material to the issues. There can be no doubt, then, that if we were to hold with defendant here we should be compelled to give a wrongdoer, liable as such under the law relating to civil liability, immunity from criminal punishment for identical acts. In other words, as a tortfeasor defendant could be held to liability, but as to the sovereign state he would be immune. Such result seems to us to be wholly unjustifiable. Surely the

wrong to an individual should not be placed upon a higher plane than the same criminal act which gave rise to the civil liability.

It is true that courts are in hopeless conflict when it comes to a solution of the problem of *identity of offenses*. Various tests have been applied by the courts. In 12 Cornell Law Quarterly, pp. 212 to 216, inc., the writer of that article (p. 214) has this to say:

"The view of the great weight of authority as to double jeopardy is that the former prosecution must have been for *the identical criminal offense*. There seems no reason why the rule should not be the same as regards double liability. Therefore, a prosecution founded upon the same transaction, act, or omission with regard to which a prosecution has already been had, is not necessarily a bar for two offenses which may have been committed." (Italics supplied.)

The cases referred to under note 13, p. 215, are especially illuminating on this phase. We shall not attempt to review all of them. A few will suffice.

Directly in point is People v. Majors, 65 Cal. 138, 3 P. 597, 603, 52 Am. R. 295. The first syllabus paragraph, fully sustained by the opinion, reads:

"The murder of two persons by the same act constitutes two offenses for each of which a separate prosecution will lie, and a conviction or acquittal in one case does not bar a prosecution in the other." In the body of the opinion (65 Cal. 146, 147) the court said: "We have attempted to show that the better rule, and that established by the great weight of respectable authority, is that the murder of two persons, even by the same act, constitutes two offenses, for each of which a separate prosecution will lie, and that a conviction or acquittal in one case does not bar a prosecution in the other."

In People v. Brannon, 70 Cal. App. 225, 233 P. 88, the court again carefully reviewed cases from other jurisdictions as well as its own. The first and second syllabus paragraphs, well sustained by the opinion, read:

"[1] It is the identity of the offense, and not of the act, which is referred to in the constitutional guarantee against putting a person twice in jeopardy. [2] Where two or more persons are injured in their persons, though it be by a single act, yet, since the consequences affect, separately, each person injured, there is a corresponding number of distinct offenses." In that case defendant shot at his wife intending to kill her but instead killed another person. The court held [p. 226] that there were two results, "each of which was an offense of violence against the person of a separate individual; and the two offenses, though resulting from the same act, were separate and distinct crimes, neither being included within the other."

To the same effect are Commonwealth v. Browning, 146 Ky. 770, 143 S. W. 407, and Commonwealth v. Anderson, 169 Ky. 372, 183 S. W. 898. In State v. Billotto, 104 Ohio St. 13, 18, 135 N. E. 285, 287, the court said:

"Each killing of each human creature constitutes a homicide, and furnishes the basis of a separate indictment in each case." And further: "You cannot try a man for the unlawful killing of any human creature other than the one he is charged with killing in the indictment upon which he is then being tried. We do not prove the substance of one crime by proving the substance of another."

In State v. Corbitt, 117 S. C. 356, 109 S. E. 133, 20 A. L. R. 328 (and see also cases cited under annotation p. 341, *et seq.*), the court fully and carefully reviewed cases from many jurisdictions. The conclusion there reached is in substance and effect the same as was reached in the other cases to which we have referred. In State v. O'Brien, 106 Vt. 97, 170 A. 98, 100, the court ably discussed this issue. (See pp. 102 to 105, inc.) The following excerpt from that case is very apt here: "It is not a second jeopardy for the same *act,* but a second jeopardy for the same *offense* that is prohibited." (106 Vt. 104.) See also Orcutt v. State, 52 Okl. Cr. 217, 3 P. (2d) 912; State v. Brooks, 215 Wis. 134, 254 N. W. 374. We refrain from further citation of the many cases available, as the cases herein referred to cite many others easily available to the profession.

From what has been said it is obvious that there is ample authority for the position taken by counsel for the state. Unless our prior decisions have aligned us with the opposite view (ably advocated and argued by defendant), we are at liberty to make our own choice. This requires a brief reference to our prior cases to which defendant refers. In State v. Moore, 86 Minn. 422, 425, 90 N. W. 787, 788, 61 L. R. A. 819, the court's conclusion was stated thus:

"Our conclusion, based upon principle and authority, is that the uttering as true of a forged mortgage, and a forged note, which the mortgage purports to secure, *at one time and to the same party, is a single act, and constitutes only one offense.*" (Italics supplied.)

In State v. Klugherz, 91 Minn. 406, 407, 408, 98 N. W. 99, 100, 1 Ann. Cas. 307, the conclusion reached is well embraced within the following quotations:

"The forging of an instrument and the uttering of it were, prior to the enactment of our Penal Code, separate offenses, and are still where each act is committed by a different person, or by the same person but at different times and as separate acts. State v. Wood, 13 Minn. 112 (121) ; State v. Goodrich, 67 Minn. 176, 69 N. W. 815. The case, however, here to be decided, is whether the forging and the uttering of an instrument by the same person, at the same time, and as one transaction, constitutes one crime or two. If two, then the person executing a single transaction whereby an instrument is both forged and negotiated commits the crime of forgery twice. * * *

"This court held in the case of State v. Moore, 86 Minn. 422, 90 N. W. 787, 61 L. R. A. 819, that the uttering as true of a forged mortgage and a forged note, which the mortgage purported to secure, at one time and to the same party, was a single act, and constituted only one offense. We cannot distinguish this case in principle from the one here under consideration, for, as the learned trial judge said, 'If there can be a case where the forging and uttering is one indivisible transaction, this is one.'

"We therefore hold, upon principle and authority, that the making of a forged written instrument, and the uttering of it by the

same person, at the same time, as one transaction, constitute but one offense.''

In State v. Healy, 136 Minn. 264, 267, 161 N. W. 590, 591, L. R. A. 1917D, 726, the court quoted with approval from Blackstone, "that the plea of a former acquittal 'must be upon a prosecution for the *same identical act and crime.*'" (Italics supplied.) We think a careful reading of the cases mentioned leads to the view that the question here presented has not heretofore been decided by this court.

In view of present-day conditions, where murderous gangs by means of high-powered machine guns, sawed-off shotguns, and the like often cause death to our citizens, and where great bodily injury or death to many may be the result of a single discharge of such weapons, it would indeed be a sad condition of affairs were we to give a narrow construction to the state's right to protect its people. The maxim for which defendant contends was not designed to foster crime but to protect the accused from double jeopardy where in point of *fact* the criminal *act* caused a particular individual the harm against which the law is directed. Obviously, we think, it was not intended to be a shield for the murderer behind which he may hide. Other illustrations can easily be made. Thus one might poison a well from which many persons might die because the water therefrom was used by many persons residing in that locality. One might throw a bomb into a large crowd of people and thereby injure many and possibly kill several. Is it reasonable that such well poisoner and bomb thrower should be held immune to prosecutions for the death of his other victims because on the trial of one so killed he was acquitted? The answer is obvious. No reasonable person would be likely to consider such result possible.

What the statute prohibits and a violation of which carries with it punishment is the "killing of a human being, when perpetrated by act eminently dangerous to others, and evincing a depraved mind, regardless of human life, although without a premeditated design to effect the death of any individual.''

We accordingly hold that the quoted inquiry should be and is answered in the negative. It necessarily follows that consideration

of the other questions submitted is needless. As the facts are established by mutual consent of counsel and duly approved by the court, it must necessarily follow that the cause be heard and determined upon defendant's plea of "not guilty" only and that his plea of prior jeopardy be denied. The cause is accordingly remanded for further proceedings in conformity with the views herein expressed.

MR. JUSTICE PETERSON, having been attorney general when the appeal in this case was taken, took no part in its consideration or decision.