## Fleming v. Commonwealth.

Oct. 25, 1940.

Joe Hobson, Special Judge.

Joe P. Tackett for appellant.

Hubert Meredith, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

About dusk on March 3, 1937, three persons, Mr. and Mrs. Dayton Duvall and Dakota Stapleton, were walking south on the right side of Highway U. S. 23 in the village of Harold which is located between Prestonsburg and Pikeville. Stapleton was not with the Duvalls but was some few feet north of them. The appellant, Ed Fleming, was driving a truck on the highway traveling in the same direction in which these persons were walking and drove the truck against them, killing Stapleton and Mr. Duvall and injuring Mrs. Duvall seriously. As a result of a prosecution growing out of this accident appellant was convicted of the involuntary manslaughter of Duvall and served a term in jail. He was tried and convicted in the early part of the year 1940 on an indictment charging him with the voluntary manslaughter of Dakota Stapleton and sentenced to three years in the penitentiary and brings this appeal.

Appellant filed a written plea of former jeopardy, by which he plead that his trial and conviction of involuntary manslaughter in the Duvall case was a bar to this prosecution against him, and on this appeal he contends that he was entitled to be discharged on his plea of former jeopardy or that in any event the court was in error in permitting evidence to be introduced showing that Duvall was killed and his wife injured at the time Stapleton was killed. He also contends that the Commonwealth Attorney was erroneously permitted to make reference in his argument to the fact that two people were killed and one injured in the accident.

We find no merit whatever in the contention that the plea of former jeopardy should have prevailed. This court has definitely decided that where one criminal act results in injury to two or more persons the perpetrator of the act may be tried and convicted as a result of the perpetration of the act on each of the in-

jured parties. For instance, in Com. v. Browning, 146 Ky. 770, 143 S. W. 407, it was held that where two or more persons were wounded by the same shot the conviction for shooting one was not a bar to a prosecution for shooting the other. The authorities generally seem to be in accord on this proposition.

Nor do we find any merit in the contention that the court should have excluded evidence that other persons besides Dakota Stapleton were injured at the same time for it has been frequently held that where two acts are so nearly connected in point of time that the evidence relating to both cannot be separated upon the trial for the first act, a conviction or acquittal on the first trial is not a bar to the trial for the second act. See Wallace v. Com., 207 Ky. 122, 268 S. W. 809, and cases therein cited. Ordinarily, of course, evidence of other crimes is inadmissible but such is not the case when other offenses are so interwoven with the one being tried that they cannot well be separated from it in the introduction of relevant and competent evidence and where two or more crimes are so linked together in point of time or circumstances that one cannot be fully shown without proving the other. Romes v. Com., 164 Ky. 334, 175 S. W. 669; Thomas v. Com., 185 Ky. 226, 214 S. W. 929. In the instant case there was no possibility of excluding evidence as to the killing of Mr. Duvall and the injury of Mrs. Duvall. Each witness when asked to describe what he found when arriving at the scene of the accident told of finding Mrs. Duvall and the bodies of the two persons who were killed. There would have been no way for the trial court to have prevented these facts from coming into evidence and therefore no error was committed in the introduction of this evidence and the comments of counsel thereon.

It is contended by appellant that the trial court committed a highly prejudicial error against him in permitting a map, or diagram, to be introduced in evidence and we have reached the conclusion that this contention must be sustained. Certain circumstantial evidence introduced by the Commonwealth as to the track of a dual wheel truck on the shoulder of the road near the point where Stapleton was killed, together with evidence as to foot prints on the shoulder of the road, had a tendency, though slight, to indicate that the truck ran off the concrete road and struck Stapleton and Mrs. Duvall

while off the road. The testimony of a woman who was very near the point of the accident was such that it probably justified the inference that the truck was off of the concrete when these parties were struck although this woman did not actually see the truck when it struck them. Appellant testified that he did not run off the road at all but that the accident occurred as a result of his being blinded by the lights of a filing station. No witness actually saw the truck at the time of the accident and no witness undertakes to state with any degree of positiveness that the truck actually ran off the concrete or struck these parties on the shoulder of the road. This, of course, was a very material point in the case, bearing especially on the degree of the offense with which the appellant was charged. It is true that the jury might have found appellant guilty of voluntary manslaughter, as it did, even though the truck did not depart from the traveled portion of the highway, but it is equally true that the jury was far more likely to conclude that the appellant was guilty of wanton and reckless conduct if he struck the injured persons while his truck was off the road.

The map, which appellant claims was prejudicial, was a large blue print drawn to scale and made by an engineer who testified and introduced it in evidence. On this map appeared two large white stars showing the location of the points where Stapleton and Mrs. Duvall were struck by the truck. These stars are located on the map several feet off the concrete on the shoulder of the road and are marked in bold lettering as the points where the truck struck Stapleton and Mrs. Duvall. The engineer did not even testify as to what persons pointed out the location of these points to him nor did any witness in the case testify that Stapleton and Mrs. Duvall were actually at these points when struck by the truck—thus the map was not verified as correct in this vital particular by any witness. We cannot escape the conclusion that in these circumstances the introduction of the map was highly prejudicial and was in effect the introduction of hearsay evidence in its most damaging form. This map, made by an engineer and drawn to scale, was, no doubt, very impressive with the jury. A peculiar danger lurks in the use of a map or diagram, that danger being that it has a tendency to impress the mind, through the eye, of the verity of

its purport. See Wigmore on Evidence, Third Edition. vol. 111, page 174. The effect of the map was equivalent to permitting this engineer to testify that someone told him that Stapleton and Mrs. Duvall were off the concrete and on the shoulder of the road when struck by the truck, while this witness, of course, could not have been permitted thus to testify. Had the map merely shown the location of the road and the various buildings it would have been in no sense prejudicial since other witnesses testified that it fairly portrayed the situation at the point of the accident and there was no contention on appellant's part that it did not do so but the location thereon of the points at which the parties were struck by the truck was highly prejudicial and such as to require a reversal of the judgment.

The judgment is reversed with directions to grant the appellant a new trial and for further proceedings consistent with this opinion.